Elmer T. ROBBINS, Appellant,

v.

Herschel Leonard ROBBINS, Respondent,

Donald Lee Ledbetter, Defendant.

No. 47043.

Supreme Court of Missouri,
Division No. 2.
Nov. 9, 1959.

Frederick E. Steck, Sikeston, for appellant.

Donald P. Thomasson, Jackson & Thomasson, Jackson, for respondent Herschel Leonard Robbins.

EAGER, Judge.

Plaintiff, a passenger, sued his own driver and the driver of another car for his personal injuries. He recovered a verdict and judgment against the other driver in the amount of $13,200, but appeals from the judgment in favor of his own driver and host. He urges here that a judgment should be directed against that defendant in the amount found against the other defendant. The facts are unusual but not unduly complicated.

Plaintiff was a tenant farmer, living a few miles from Benton, Missouri. Defendant Robbins, his son, lived in St. Louis. On the day before this occurrence the son, with his wife and four small children, came down to visit his father (plaintiff) and mother for the weekend. On Saturday afternoon, June 29, 1957, all rode to Sikeston in the son's Studebaker car on a shopping tour. As they started back to plaintiff's home his wife suggested that they stop at an IGA market to get groceries. We digress here to say that the father was on the right side of the front seat with a two-year old granddaughter on his lap, a grandson was sitting between plaintiff and the driver, and the four others were on the back seat. The store faced north and also faced Highway 60; the car was traveling east on Highway 60, which was also a town street at that point. A black top

parking lot immediately west of the store was approximately 130–140 feet north and south and 115 feet east and west, with some additional space just in front of the store. Selma Street ran north and south along the west side of the lot. There were three entrances to the lot—one at the southwest corner, one on the north side near the northwest corner, and one on the north side in front of the building. There was a slight rise from the street to the surface of the lot at the northwest corner where defendant Robbins entered. (We shall hereafter refer to defendant Robbins as "Robbins," to the father as "plaintiff," and to the other defendant as "Ledbetter"; this may avoid some confusion.)

Since plaintiff urges the binding effect of Robbins' own testimony, we note it first. He testified: that he left the highway at about 10–15 miles an hour and that his automatic gear then "down shifted"; that he entered the lot at about 5–6 miles an hour, having slowed on the grade; that, as he left the highway and pulled into the lot, he looked on the lot and saw that there was no moving car, only one or two cars parked over on the east side; that he turned east and drove towards the building to park, proceeding near the north side of the lot at about 4–5 miles per hour; when he had driven perhaps 35–40 feet the plaintiff called out, "Look out, son, he is going to hit us"; that he jammed on his brakes and stopped within approximately three feet but by that time Ledbetter's car had hit them; that, in fact, by the time he looked around, "I was done hit." The left side of Ledbetter's bumper struck the rear of the right front wheel and fender of Robbins' car. The gist of Robbins' testimony was: that he looked when he came on the lot, saw no moving car, and turned and proceeded slowly to a parking place at the east side of the lot; that he had already looked over the lot, did not need to continue to look to the south, and did not do so. He was about two car lengths from his parking place when struck. The plaintiff testified: that after they had gotten on the lot he saw the Ledbetter car pull on the lot at the southwest entrance; that he thought it was going to pull up to the building and park, like the others; that Ledbetter slowed down a little "when he hit the lot," then picked up speed and proceeded diagonally across the lot from southwest to northeast at approximately 25–30 miles an hour; that plaintiff and his wife both yelled when Ledbetter was approximately 40 feet away; that Robbins immediately applied his brakes and his car "just squatted," but he couldn't avoid the collision; that plaintiff saw the Ledbetter car from the time it entered the lot; that it was traveling at 25–30 miles an hour until the driver applied his brakes, and that he was then approximately 20 feet away; that the Ledbetter boy said after the collision that he was cutting across the lot to go to the "Bull Dog Inn"; that Ledbetter's skidmarks were 15 or 20 feet long; the policeman said they were 15. Robbins' skidmarks were three feet long. Donald Lee Ledbetter was driving a 1947 Mercury convertible; he was 18 years of age at the time of this collision. A guardian ad litem was appointed for him. He testified: that he turned on to the parking lot and slowed to see if a garage, just south of the lot, was open; it was not, so he speeded up and went on across the lot in a northeasterly direction to an exit at that corner; that he was driving at about 15–20 miles an hour; that he slowed down as he approached the north end of the lot, but that the Studebaker was about 10 feet from him when he first saw it; that he "locked" his brakes but did not swerve; that he had a clear view and there was nothing to prevent him from seeing Robbins' car; that he looked across the lot as he started across it and it was clear; that he skidded five or six feet, but that the marks were longer, because "my back wheels slid into my front wheels"; that he was driving at about 15 miles an hour when he saw the other car; that he was going to the Standard station about ten blocks down Highway 60, but had intended stopping on the lot if the garage was open; in his deposition he had admitted that he was just cutting across the

lot. The collision occurred about 20–30 feet west of the grocery building. There was certain incidental and corroboratory testimony which is not material to a disposition of the case. Plaintiff also produced evidence of rather severe injuries, but that evidence also is not material here. There was no contention of a joint venture, but the issue of contributory negligence was submitted on behalf of both defendants.

Defendants Robbins and Ledbetter each moved for a directed verdict; both motions were overruled. Plaintiff asked no peremptory instruction and submitted all issues to the jury. All statutory references herein will be to RSMo 1949, V.A.M.S.

█ Plaintiff urges here: (a) that Robbins was guilty of negligence as a matter of law in failing to keep a lookout, and that the verdict and judgment in his favor may not stand; and (b) that the contributory negligence instruction was prejudicially erroneous. In support of (a) plaintiff urges that Robbins never did see the Ledbetter car until it struck his car, whereas Ledbetter, who was found negligent, saw Robbins' car when 10–15 feet away; that the verdict is inconsistent. We have determined that plaintiff has not preserved this point for our review. He offered no motion for a directed verdict at any time (§ 510.280) but offered, and the court gave Instruction No. 2, which submitted to the jury as a fact issue defendant Robbins' failure to keep a lookout and the question of proximate cause; he submitted a similar instruction as to Ledbetter. It is true that it is "* * * very seldom that a trial court is justified in directing a verdict in favor of a party having the burden of proof * * * upon oral testimony." (Beezley v. Spiva, Mo., 313 S.W.2d 691, 695), and we do not intimate that it should have done so here; however, it is ordinarily incumbent upon a party in a jury case to raise that point specifically in the trial court before asking an appellate court to set aside a verdict for insufficient evidence. Muegler v. Crosthwait, Mo.App., 179 S.W.2d 761,

763; Greer v. Carpenter, 323 Mo. 878, 19 S.W.2d 1046, 1047; Harbison v. Chicago, R. I. & P. R. Co., 327 Mo. 440, 37 S.W.2d 609, 614, 79 A.L.R. 1; Silberman v. Hicks, Mo.App., 231 S.W.2d 283, 285; Hauber v. Gentry, Mo., 215 S.W.2d 754, 759; Lehnerts v. Otis Elevator Co., Mo., 256 S.W. 819, 821; Alford v. Thomas, 236 Mo.App., 1099, 162 S.W.2d 356; Dusky v. Kansas City, 227 Mo.App. 849, 58 S.W.2d 768. See also Sections 510.280–510.290 on the requirement of a motion for directed verdict. Compare Rule 3.23 and § 510.310 for nonjury cases. The present Civil Code has made no change in this requirement. Appellate courts are merely courts of review for trial court errors, and there can be no review of a matter which has not been "presented to or expressly decided by the trial court." Scowden v. Scowden, Mo.App., 298 S.W. 2d 484, 485. Section 512.160(1) expressly provides (with stated exceptions) that no allegations of error shall be considered except such as have been presented to or expressly decided by the trial court.

█ Although the foregoing might well dispose of the first question, we consider also the point which both parties have briefed on the sufficiency of the assignments in the motion for new trial. It is elementary that all allegations of error (with stated exceptions not applicable here) must be preserved in a motion for new trial and presented to the trial court. Rule 3.23. Here the only assignments relied on are: (a) that the verdict in favor of Robbins "is against the weight of the evidence"; and (b) that it is "against the law and the evidence and the law under the evidence." We first note that (b) raises nothing; certainly this is true in cases at law, tried to a jury. Findley v. Johnson, Mo., 142 S.W.2d 61, 62; Muegler v. Crosthwait, Mo.App., 179 S.W.2d 761, 763. And see, generally: Moon Distributing Co. v. Marable, Mo. App., 287 S.W.2d 635; Castorina v. Herrmann, 340 Mo. 1026, 104 S.W.2d 297; Marsters v. Bray, Mo., 85 S.W.2d 479, 481; Smith v. Staley, Mo.App., 156 S.W.2d 766.

An assignment that the verdict is against the weight of the evidence presents a matter which is essentially for the trial court. Siegel v. Ellis, Mo., 288 S.W. 2d 932, 934; Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 590; Nichols v. Bresnahan, 357 Mo. 1126, 212 S. W.2d 570, 572; Nelson v. Tayon, Mo., 265 S.W.2d 409, 416. Only in a rare case does an appellate court set aside a verdict on that ground where the trial court has ruled. Reger v. Nowotny, Mo., 226 S.W.2d 596. The assignment in itself implies that there is some evidence to support the verdict. See discussion in Palmer v. Lasswell, Mo. App., 267 S.W.2d 492, 495, cited by plaintiff. When the case depends upon oral evidence, the weight and value of all the evidence is for the jury and the trial court. Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570, 572; Clark v. McKeone, Mo., 234 S.W.2d 574, 576; and it has been said in such instances that "Whether a jury's verdict is against the weight of the evidence is a question for the trial court alone." Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907, 917. A jury is at liberty to believe or to disbelieve and disregard any part of the oral testimony, even though there be no controverting testimony, and to accept or reject either version of an occurrence such as this; and the burden is upon the plaintiff to persuade and convince the jury upon the oral evidence. Clark v. McKeone, supra. Thus, the jury may find for the defendant in a case depending on oral testimony, even though the defendant offers no testimony. Cluck v. Abe, 328 Mo. 81, 40 S. W.2d 558. Although plaintiff asserts here a total insufficiency of evidence to support the verdict, the essence of the argument goes to the weight and effect of defendant Robbins' testimony (that he did not look again) as establishing his own negligence and proximate cause. That we may not consider. This is not an instance of a complete absence of evidence to support a verdict, nor has there been a judicial admission of negligence. Plaintiff argues, in effect, that the jury was forced to believe Robbins' statement, not only to prove that he did not look, but as a confession of negligence and proximate cause, and that we should hold him convicted of proximate cause negligence as a matter of law. This we may not do. The assignment raises no question of law which we may pursue; there was no complete absence of probative evidence, and no such admission as permits or requires our action. On the contrary, there was oral testimony which the jury might accept or reject; and it might construe the effect of the testimony of Robbins as bearing on the question of negligence under all the circumstances, and also on proximate cause.

From what we have said it is clear that there is no occasion for invoking Rule 3.27. Our discussion demonstrates that there was no plain error of the trial court nor has any manifest injustice been shown. The authorities cited by plaintiff as establishing conclusive negligence of a driver in not keeping a lookout are highway and street intersection cases based on wholly different facts and circumstances. Neal v. Kropp Produce Co., Mo.App., 299 S.W.2d 888; Burton v. Moulder, Mo., 245 S.W.2d 844; Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124; Branscum v. Glaser, Mo., 234 S.W.2d 626.

Various complaints are made of Instruction No. 7, submitting the issue of contributory negligence. The instruction directed the jury to find for "the defendants" if it found plaintiff contributorily negligent; only one such instruction was given. The jury found for the plaintiff and against defendant Ledbetter. The only possible construction of its verdict is that it found that plaintiff was not contributorily negligent; otherwise it could not have found for him against either defendant. Under these circumstances the instruction could not have constituted prejudicial error and we need not consider the specific objections.

The judgment will be affirmed. It is so ordered.

All concur.