348 S.W.3d 770 (2011)
In The Interest of B.H.
No. SC91584.
Supreme Court of Missouri, En Banc.
October 4, 2011.
*771 Michael E. Crowley, Stinson Morrison Hecker LLP, Kansas City, for Mother.
Lori L. Stipp, Jackson County juvenile office, Kansas City, for juvenile officer.
MARY R. RUSSELL, Judge.
A mother whose parental rights were terminated asserts that her due process rights were violated when the trial court did not articulate the correct burden of proof for the evidence it found supporting the termination.
This Court finds no due process violation, and the judgment is affirmed. There was clear, cogent and convincing evidence supporting the ground for termination, and the preponderance of the evidence showed that the termination was in the child's best interest.[1]

I. Background
M.H. (Mother) gave birth to B.T.H. (Son) in 2005. She was later arrested in 2009 for soliciting herself for prostitution on Craigslist, and Son was removed from her custody. She admitted to police that she regularly conducted acts of prostitution in her and Son's home, and she stated that she locked Son in his bedroom when prostitution clients were present. While Son was in state custody, the State learned that Mother has significant mental deficiencies, including mild mental retardation *772 with an I.Q. of 69. Mother's psychological evaluation stated that people with I.Q. scores like hers are usually not able to parent independently and that Mother may need a legal guardian. She was also diagnosed with antisocial personality disorder.
Mother has an extensive history with the Children's Division. Since 1985, she has had her parental rights terminated to all of her seven other children. Additionally, Mother had past criminal convictions for one count of statutory rape in the second degree in violation of section 566.034, RSMo 1994, and two counts of statutory sodomy in violation of section 566.064, RSMo 1994, for engaging in prostitution with a 14-year-old.[2] Because of these convictions, she is a registered sex offender and had been incarcerated from November 1998 until June 2004. Subsequent to her 2009 prostitution arrest, the Jackson County juvenile officer filed a petition to terminate Mother's parental rights to Son, alleging four grounds for termination pursuant to section 211.447.[3]
The trial court found one ground for termination by "clear, cogent and convincing evidence"that mother had abused or neglected Son.[4] The court also found by a preponderance of the evidence that termination of Mother's parental rights was in the best interest of Son.

II. Section 211.447
In termination of parental rights cases, Missouri statutes recognize and protect the "constitutional rights of all parties in the proceedings," the "birth family relationship when possible and appropriate," and the "entitlement of every child to a permanent and stable home." Section 211.443, RSMo 2000. Section 211.447.6 outlines the standard of proof required for involuntary termination of parental rights: "The juvenile court may terminate the rights of a parent to a child ... if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination...." This statute requires that a statutory ground for termination be found by "clear, cogent and convincing evidence." In re P.L.O., 131 S.W.3d 782, 788 (Mo. banc 2004). After a ground for termination has been shown, section 211.447 requires that termination be found in the child's best interest by a preponderance of the evidence standard of proof. Id. at 789.

III. Mother's Arguments on Appeal
Mother appeals, arguing that the involuntary termination of her parental rights was in error because (1) the trial court failed to state the burden of proof that applied to each section 211.447 ground it found supporting termination and it failed to state the burden of proof it applied to its consideration of conditions or acts under section 211.447, (2) section 211.447 is unconstitutional because it does not require the best interest of the child be found by "clear, cogent and convincing evidence," and (3) the trial court did not properly find how Mother's past behavior demonstrated a risk of future harm to Son.

A. The Trial Court's Finding of the Abuse or Neglect Ground
Mother argues that the trial court misapplied section 211.447 in its judgment. *773 The judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).

1. A Finding of One Ground for Termination Is Sufficient
Mother argues that the trial court erred in failing to explicitly find each ground for termination listed in its judgment by "clear, cogent and convincing evidence."
Missouri statutes provide nine grounds for involuntary termination of parental rights. Section 211.447. Here, the court articulated three of those grounds for the termination of Mother's parental rights. The three grounds stated in the judgment were: abuse or neglect of the child (section 211.447.5(2)); the child has been within the jurisdiction of the court for over one year and the conditions that led to the court's jurisdiction have not been rectified (section 211.447.5(3)); and Mother is unfit as a parent because of a consistent pattern of abuse (section 211.447.5(6)).
Although these three grounds were listed in the judgment, only the abuse or neglect ground (section 211.447.5(2)) was explicitly found by "clear, cogent and convincing evidence." The other two grounds, the parties agree, do not meet the statutory requirements because there is no specific judicial finding that there was "clear, cogent and convincing evidence" to support them. Although the abuse or neglect ground was the only one found by "clear, cogent and convincing evidence," one ground alone is sufficient to terminate Mother's parental rights. In re A.M.S., 272 S.W.3d 305, 308 (Mo.App.2008).

2. Section 211.447 Does Not Require the Conditions or Acts Be Explicitly Found by Clear, Cogent and Convincing Evidence
Mother further contends that the court's finding of the statutory ground of abuse or neglect by "clear, cogent and convincing evidence" is conclusory. She argues that at least one or all of the conditions or acts required to be considered under 211.447.5(2) must explicitly be found by "clear, cogent and convincing evidence."
In order to terminate parental rights based on the statutory ground of abuse or neglect, section 211.447.5(2) provides that the trial court shall consider and make findings on four conditions or acts of a parent: (1) the parent's mental condition; (2) the parent's chemical dependency; (3) the parent's actions of physical, emotional, or sexual abuse toward the child; and (4) the parent's failure to provide care and control necessary for the child's physical, mental, or emotional health and development. Section 211.447.5(2).
The trial court made findings as to all four section 211.447.5(2) conditions or acts without stating any burden of proof standard. Specifically, with regard to Mother's mental condition, the judgment stated that she "suffers from a permanent mental condition which impairs her ability to parent on a permanent basis in that the mother suffers from mental retardation and functions at a second grade level." It found that Mother's "mild mental retardation prevents her from comprehending the child's problems" and that "[M]other had difficulty reading letters which were sent to her home and would need assistance in order to understand them." It also found that "[M]other's ability to reason, regarding parenting, is impaired by her mental issues" and that "[M]other's psychological evaluation recommended a guardian for [M]other." The court concluded its consideration *774 of Mother's mental condition by stating: "the mental health condition of [M]other is of a permanent nature or such that there is no reasonable likelihood that the condition can be reversed and which renders the mother unable to knowingly provide the child the necessary care, custody and control."
With regard to whether Mother had a chemical dependency, the trial court found that there was no such evidence.
In reviewing whether Mother physically, emotionally, or sexually abused the child, the court found "evidence established that the child suffered severe and recurrent acts of physical abuse by mother or someone else." It found that the child had stated that his mother and other males had placed their fingers inside of his anus, and that the child exhibits "extreme behavioral and emotional issues." The court found the child demonstrated behaviors related to sexual abuse, including: (1) actions of humping; (2) use of inappropriate sexual language; and (3) asking other children to touch his private areas.
Finally, the court found that Mother "did repeatedly fail to provide care and control necessary for [Son's] mental or emotional health and development." It found that all of Son's developmental delays were the result of neglect and that "the child's behavioral and emotional issues were trauma related." The court concluded that "the child's anxiety and aversion to visits with [M]other were attributed to abuse while in [M]other's care and control."
Mother does not cite any persuasive authority to support her argument that these section 211.447.5(2) conditions were required to be found by "clear, cogent and convincing evidence." The burden of proof governs the standard that the courts apply in looking at the evidence as a whole in deciding whether a case has been made; Mother cites no instance in which a court or statute has said that each or any piece of evidence that the fact-finder relies on in determining whether the burden of proof has been met also must be shown by "clear, cogent and convincing evidence." Certainly the statute does not so require here. Section 211.447.5(2) requires the trial court to make specific findings regarding the conditions or acts listed in the statute when determining whether or not the statutory ground of abuse or neglect for termination of parental rights exists. Section 211.447.5(2) does not require that any specific statutory condition or act be proven by "clear, cogent and convincing evidence" in order to terminate an individual's parental rights.
The court made detailed specific findings to support the statutory conditions or acts. Here, despite Mother's argument, they were not conclusory. The trial court did explicitly find that the ground for termination existed by "clear, cogent and convincing evidence" as required by section 211.447.6. The trial court did not erroneously apply the law.

B. Preponderance of the Evidence Is a Constitutional Burden of Proof for the Best Interest of the Child Finding
After a sufficient showing of a ground for termination, the trial court is then required to determine whether or not termination of parental rights is in the best interest of the child. Here, the trial court made the best interest finding by a preponderance of the evidence, which is all that is required under section 211.447. In re P.L.O., 131 S.W.3d at 789.
Mother, however, challenges the constitutionality of section 211.447. She argues that the trial court erred in its judgment because due process requires a finding by "clear, cogent and convincing evidence" of both the ground for termination of parental rights and the finding that termination *775 is in the best interest of the child. She contends that because the statute does not require a finding that termination is in the best interest of the child by "clear, cogent and convincing evidence," it violates due process pursuant to Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Her constitutional challenge is reviewed by this Court de novo. City of Arnold v. Tourkakis, 249 S.W.3d 202, 204 (Mo. banc 2008).
Mother urges that Santosky requires the best interest of the child finding be found by "clear, cogent and convincing evidence" to comport with due process. Santosky involved an involuntary termination of parental rights based upon a finding of permanent neglect. 455 U.S. at 747, 102 S.Ct. 1388. New York bifurcated its permanent neglect proceedings into a "factfinding" and a "dispositional" stage. Id. at 748, 102 S.Ct. 1388. During the "factfinding" stage, the New York statute authorized a termination of parental rights based upon a finding by "a fair preponderance of the evidence" that, among other things, the child's natural parents failed "substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so." Id. The United States Supreme Court determined that, because there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child," then the "`fair preponderance of the evidence' standard in such proceedings is inconsistent with due process." Id. at 753, 758, 102 S.Ct. 1388. The Court reasoned that "a `clear and convincing evidence' standard of proof strikes a fair balance between the rights of the natural parents and the State's legitimate concerns." Id. at 769, 102 S.Ct. 1388. The Court further held that "determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts." Id. at 769-770, 102 S.Ct. 1388. Missouri's legislature has determined that the proper standard sufficient to find grounds for termination is "by clear, cogent and convincing evidence." Section 211.447.6.
Mother contends that Santosky likewise requires that an involuntary termination of parental rights be found in the best interest of the child by "clear, cogent and convincing evidence." Mother's argument, however, ignores an important consideration spelled out in Santosky. While the United States Supreme Court recognized that the child is "also deeply interested in the outcome of [the termination] contest," the Court was not concerned with the child's interests in Santosky, 455 U.S. at 759, 102 S.Ct. 1388. This is because Santosky addressed the "factfinding" stage of the termination of parental rights statute. Id. At that stage "the focus emphatically is not on [the child]." Id. "The factfinding does not purportand is not intendedto balance the child's interest in a normal family home against the parents' interest in raising the child." Id. At the "factfinding" hearing, the state and the parents are adversaries. Id. "Victory by the State not only makes termination of parental rights possible; it entails a judicial determination that the parents are unfit to raise their own children." Id. at 760, 102 S.Ct. 1388. Santosky further described how the best interest of the child is taken into account in the "dispositional" stage and how that stage differs from the "factfinding" stage:
At the factfinding, the State cannot presume that a child and his parents are adversaries. After the State has established parental unfitness at that initial proceeding, the court may assume at the dispositional stage that the interests of the child and the natural parents do diverge. See Fam.Ct.Act § 631 (judge shall make his order "solely on the basis of the best interests of the child," and thus has no obligation to consider the *776 natural parents' rights in selecting dispositional alternatives). But until the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship. Thus, at the factfinding, the interests of the child and his natural parents coincide to favor use of error-reducing procedures. Id. at 760-761
Although Missouri statutes do not bifurcate the "factfinding" and the "dispositional" stages of an involuntary termination of parental rights, section 211.447.6 is similar to the statute at issue in Santosky in that it requires a two-step analysis. First, a ground for termination must be shown by "clear, cogent and convincing evidence," mirroring the "factfinding" stage of Santosky. In re P.L.O., 131 S.W.3d at 788; Santosky, 455 U.S. at 769-770, 102 S.Ct. 1388. Next, similar to the "dispositional" stage in Santosky, a court is required to determine whether or not termination of parental rights is in the best interest of the child by a preponderance of the evidence. In re P.L.O., 131 S.W.3d at 789.
The more stringent standard of "clear, cogent and convincing evidence" is required for the finding of a statutory ground for termination because it operates as a protection of the "fundamental liberty interest of natural parents in the care, custody, and management of their child." Santosky, 455 U.S. at 753, 102 S.Ct. 1388. The "best interest of the child" prong, however, is not a protection for the parent. In fact, after a determination that a ground for termination of parental rights exists, the trial court constitutionally "may assume ... that the interests of the child and the natural parents do diverge." Id. at 760, 102 S.Ct. 1388. At this point in the proceeding, the court's focus is solely on whether or not termination would actually be in the best interest of the child. This determination need not be made by a heightened standard of proof, because to require a higher standard of proof would impose a greater burden on the child to show that he or she would be better off in the custody of another. In other words, requiring a heightened standard would transform a statutory protection into a statutory impediment for the child.
Mother was determined unfit to parent Son in accordance with the constitutional protections required in Santosky. After this determination was made, she cannot stand in the shoes of her child and assert his statutory protections as a further impediment to actions in his best interest. Raising the standard of proof would serve only to frustrate earnest attempts to improve the situation of a child. Where a statutory ground for termination has been found by "clear, cogent and convincing evidence," finding that the termination is in the best interest of the child based on the preponderance of the evidence standard comports with due process under Santosky.
Mother relies heavily on the dicta of Cannon v. Cannon to support her argument that in termination cases, section 211.447 requires that the best interest of the child finding be made by "clear, cogent and convincing evidence." 280 S.W.3d 79, 86 (Mo banc.2009). Mother's reliance on Cannon is misplaced, however, because Cannon was a visitation case related to a divorce proceeding, not an involuntary termination of parental rights case. Id. at 81. Cannon's dicta is not controlling upon this Court in interpreting the constitutionality of Missouri's involuntary termination of parental rights statute. To the extent that Cannon conflicts with this Court's interpretation of section 211.447 in this opinion, it is no longer to be followed. Similarly, although the reversal of the termination of the mother's parental rights in In re C.W. was correct, to the extent C.W. states that *777 the best interest of the child must be found by "clear, cogent and convincing evidence," it is inconsistent with section 211.447 and is no longer to be followed. 211 S.W.3d 93 (Mo. banc 2007).

C. Past Behavior Demonstrates a Risk of Future Harm
Mother argues that termination was not proper because the trial court did not consider whether her past behavior demonstrates a risk of future harm to Son as required by In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).
The trial court found in its judgment that "the mental health condition of [M]other is of a permanent nature or such that there is no reasonable likelihood that the condition can be reversed and which renders the mother unable to knowingly provide the child the necessary care, custody and control." Despite Mother's assertion, this finding is not conclusory. Specifically, the court found that Mother "suffers from mental retardation and functions at a second grade level." It also stated that "[M]other's ability to reason, regarding parenting, is impaired by her mental issues," and that "[M]other's psychological evaluation recommended a guardian for [M]other." It made a finding that continued care in the hands of Mother would likely cause future harm to the child based both upon past conditions and conditions that existed at the time of the judgment. In that it is difficult to predict future harm, to ask anything more of the trial court would be asking it to predict the future with a near impossible degree of certainty. See In re K.A.W., 133 S.W.3d at 9. Here, the court properly addressed the risk of future harm.
Mother further argues that the court erred in terminating her parental rights because it only made a specific finding as to future harm with regard to Mother's mental condition under 211.447.5(2)(a). She points to language in In re S.M.H. stating that a parent's mental condition alone that renders her unable to raise a child does not provide a basis for termination. 160 S.W.3d 355, 372 (Mo. banc 2005). In In re S.M.H. this Court stated "[p]oor conduct or character flaws are not relevant unless they could actually result in future harm to the child." Id.
Mother's argument is inapposite to the trial court's judgment in this case. The trial court did not rely solely upon the fact that Mother has diminished mental capacity in finding that there had been abuse or neglect. The trial court also made findings as to recurrent sexual abuse and findings about Mother's inability to provide for Son's mental or emotional health and development in the future. The evidence supports the trial court's finding that both Mother's parenting skills and her child's condition while in her care show no signs of improvement. The trial court did not err in its consideration of Mother's mental capacity in relation to future harm.

IV. Conclusion
Missouri's two-step procedure for the involuntary termination of parental rights is not focused solely on the rights of the parent in question. The termination decision requires careful consideration of the interests of both the parent and the child. The State must balance parents' fundamental interest in raising their children with the best interest of the child involved. To that end, Missouri's statutory involuntary termination of parental rights scheme comports with due process under Santosky, and the trial court did not erroneously apply the law. The judgment is affirmed.
*778 TEITELMAN, C.J., BRECKENRIDGE, FISCHER, STITH and PRICE, JJ., and FRANCIS, Sp.J., concur.
NOTES
[1] This Court has jurisdiction under Mo. Const. art. V, sec. 3, as this case raises an issue of the constitutional validity of a Missouri statute.
[2] Mother maintained that there was nothing wrong with her sexual conduct with the 14-year-old because "the victim paid for it."
[3] All statutory references are to RSMo Supp. 2010, unless otherwise indicated.
[4] The trial court also found two other grounds for termination without explicitly stating what standard it applied to those findings. This Court does not review those grounds.