

## Missouri Court of Appeals
### Southern District
### Division One

IN THE INTEREST OF: A.R.F.      )
GREENE COUNTY JUVENILE OFFICE,      )
     )
         Respondent,      )
     )
     vs.      )    No. SD36198
     )
V.H.F.,      )    FILED: February 4, 2020
     )
         Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Robert M. Liston, Judge

**AFFIRMED.**

V.H.F. ("Mother") appeals the trial court's judgment terminating her parental rights to

A.R.F. ("Child") on the ground in section 211.447.5(2) ("neglect"), the ground in section

211.447.5(3) ("failure to rectify"), and the grounds in section 211.447.5(5)(b) b and c ("parental

unfitness").[1] The trial court also found that terminating Mother's parental rights was in Child's

best interest. In a single point relied on, Mother claims that the trial court erroneously applied

the law

> in finding that there exists a significant likelihood of future harm to the Child if
> parental rights are not terminated … in that it did not conduct a prospective
> analysis of the likelihood of future harm but merely relied upon past acts of

---

[1] All statutory references are to RSMo Cum. Supp. 2018.

1

neglect by Mother as the evidentiary basis for this essential element of termination of parental rights.

We disagree and affirm the trial court's judgment.

"A reviewing court *will* affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or erroneously declares or applies the law." ***In re Q.A.H.***, 426 S.W.3d 7, 12 (Mo. banc 2014) (emphasis added).

In her argument, Mother asserts that her "allegation of error concerns the trial court's findings regarding *an essential element* of the relief sought by the Petitioner and thus was clearly presented to the trial court for disposition."[2] (Emphasis added.) She posits four sentences from

---

[2] Mother also asserts that

> The allegation of error does not relate to the form or language of the judgment nor a failure to make statutorily required findings, rather it relates to the failure to conduct a necessary analysis as revealed by the findings contained in the judgment. Accordingly, no post-trial motion would be required to preserve the issue pursuant to Supreme Court Rule 78.07(c).

Because we conclude that Mother's sole point is not cognizable and has no merit as a misapplication of law, *infra*, we need not reach or consider whether this assertion by Mother is accurate or not.

We note, however, that ***In re K.A.W.***, 133 S.W.3d 1 (Mo. banc 2004), upon which Mother solely relies for her claim of legal error, was decided on March 30, 2004. The "required findings" language in Rule 78.07(c), however, was not adopted by the Supreme Court until June 17, 2004, and did not become effective until January 1, 2005. Rule 78.07(c), Missouri Court Rules (2005). While that change expressly includes "the failure to make statutorily required findings" as a subset of "the form or language of the judgment" phrase as used in the rule, it also implies that the somewhat larger set of failure to make any legally required finding is also a subset of that phrase. Indeed, Rule 78.07(c) has been held applicable to legally required findings other than those required by statute. *See e.g.*, ***Johnson v. State***, 388 S.W.3d 159, 168 (Mo. banc 2012) (applying rule to failure to make findings required by Rule 29.15(j)); ***Crow v. Crow***, 300 S.W.3d 561, 565-66 (Mo.App. 2009) (applying rule to failure to make findings required by Rule 88.01); ***Stuart v. Ford***, 292 S.W.3d 508, 516-17 (Mo.App. 2009) (applying rule to failure to make findings regarding party's ability to pay a contempt judgment); ***G.J.R.B. ex rel. R.J.K. v. J.K.B.***, 269 S.W.3d 546, 555 n.3 (Mo.App. 2008) (applying rule to failure to make findings regarding denial of request for reimbursement of necessaries).

Litigants should be mindful of our Supreme Court's admonition that

> Failure of the circuit court to make any of these findings does not itself provide a basis for reversal. The party appealing must object at the trial level to the failure to make a finding so the circuit court has an opportunity to correct the error. Rule 78.07(c). In the absence of objection, the failure to make such required findings is waived and does not itself provide a basis for reversal or remand when the evidence supports one or more grounds for termination despite the lack of such findings.

***In Interest of T.T.G. v. K.S.G.***, 530 S.W.3d 489, 495 n.4 (Mo. banc 2017).

***In re K.A.W.***, 133 S.W.3d 1, 9 (Mo. banc 2004) as the applicable law she claims the trial court erroneously applied:

- An essential part of any determination whether to terminate parental rights is whether, considered at the time of the termination and looking to the future, the child would be harmed by a continued relationship with the parent.
- A prospective analysis is required to determine whether grounds exist and what is in the best interests of the child for the reasonably foreseeable future.
- [I]t is insufficient merely to point to past acts, note that they resulted in abuse or neglect and then terminate parental rights.
- There must be some explicit consideration of whether the past acts provide an indication of the likelihood of future harm.

Mother then singularly seizes and relies upon a sentence in the trial court's 10-page single-spaced judgment—"There is significant likelihood of future harm to the child if parental rights are not terminated because the mother has neglected the minor child"—to assert that "the trial court wholly failed to conduct a prospective analysis or explicitly consider whether past acts provide an indication of the likelihood of future harm." Mother sharpens her misapplication of law challenge by conceding "that under this Court's standard of review, substantial evidence exists that she neglected her child. However, this is not enough to satisfy the *essential elements* for termination without a proper K.A.W. future harm analysis, which must be explicitly made." (Emphasis added.)

Mother's misapplication of law challenge and underlying analysis, however, are flawed by her assumption that ***K.A.W.*** created what she characterizes as an "essential element" of termination that requires a future harm analysis and explicit finding separate and apart from the analyses and findings supporting the grounds and best interest determinations made by the trial court. Mother's assumption is incorrect and misconstrues ***K.A.W.*** by ignoring the context within which the ***K.A.W.*** court described the future harm analysis requirement and the manner in which

3

it addressed and resolved its absence in that case based upon the lack of supporting substantial evidence.

*K.A.W.* described the future harm analysis requirement within the context of the trial court's determinations as to "whether *grounds* exist and what is in the *best interests* of the child for the reasonably foreseeable future." *Id.* at 9 (emphasis added). While Mother quotes this passage from *K.A.W.* in her argument, *supra*, she ignores its import upon her alleged claim of a misapplication of law by the trial court. Moreover she fails to mention that *K.A.W.* further observed that "[p]ast behavior can support *grounds* for termination, *but only if it is convincingly linked to predicted future behavior.*" *Id.* at 9-10 (emphasis added). In other words, the *K.A.W.* court developed, described, and discussed the future harm analysis as an integral part of the trial court's *factual* determinations of the existence of a ground for termination and of the child's best interest, not as a stand-alone element of termination requiring a separate explicit finding.

This view is confirmed by the manner in which the *K.A.W.* court addressed and resolved whether the trial court utilized a future harm analysis there. First, the court examined five "specific acts and conditions of Mother" that the trial court relied upon in support of the *grounds* for termination to determine whether each was supported by substantial evidence to, among other things, provide "an indication of the likelihood of future harm" to the children. *Id.* at 12-16. The court concluded that none were supported by substantial evidence. *Id.* Second, the *K.A.W.* court then turned to each of the three grounds for termination, as found by the trial court, and its best interest determination to consider whether the trial court's *factual* findings on each were sufficient to support termination. *Id.* at 16-21. The court ultimately concluded that these *factual* findings were "insufficient to support termination." *Id.* at 21.

Our Supreme Court has taken this same approach on the two occasions since *K.A.W.* where it has considered challenges to a trial court's future harm analysis. *Q.A.H.*, 426 S.W.3d at 14; *In re B.H.*, 348 S.W.3d 770, 777 (Mo. banc 2011). In both, the court concluded that the relevant termination grounds were supported by substantial evidence supporting the potential for future harm. *Q.A.H.*, 426 S.W.3d at 15; *B.H.*, 348 S.W.3d at 777.

*K.A.W.*'s future harm analysis requirement, therefore, applies to and must be reviewed within the context of the evidentiary support for a trial court's determination as to the existence of a termination ground or the best interest of the child. *See K.A.W.*, 133 S.W.3d at 9. Here, Mother raises no evidentiary challenge to any of the trial court's termination grounds or its best interest determination.[3]

Mother's reliance upon *K.A.W.* as establishing a legal requirement for the trial court to make an explicit future harm analysis separate and apart from its grounds and best interest determinations is misplaced and incorrect. Mother's misapplication of law challenge based solely upon her incorrect reliance upon *K.A.W.* necessarily fails and her point is denied.

---

[3] The trial court's judgment makes extensive factual findings, among others, specifically directed toward Mother's long-standing chemical dependency before Child's birth, during Child's birth, after Child's birth while in protective custody, and as recent as the month before the termination hearing, how Mother has failed to appropriately address that dependency, and how it has impacted and will continue to impact Child. Our *ex gratia* review reveals that these factual findings are supported by substantial evidence and are sufficient to support the trial court's determination under section 211.447.5(2)(b) that Mother has a "a chemical dependency *that would prevent [her] from consistently providing the necessary care, custody, and control of [Child] and that cannot be treated so as to enable [her] to consistently provide such care, custody and control*"[;] its determination under section 211.447.5(3)(d) that Mother has "a chemical dependency, *which would prevent [her] from consistently providing the necessary care, custody and control of [Child] and which cannot be treated so as to enable [Mother] to consistently provide such care, custody and control*"[;] its determinations under section 211.447.5(5)(b) b and c that Mother is presumed to *be unfit to be a party to the parent child relationship* and that Mother did not overcome that presumption; and its determination under section 211.447.7(4) that "[a]dditional services *would not be likely to bring about a lasting parental adjustment so as to enable a return of [Child] to [Mother] within an ascertainable period of time*." (Emphasis added.) As these findings confirm, the trial court explicitly engaged in a future harm analysis as contemplated by *K.A.W.* Of course, in coming to the opposite conclusion, the *K.A.W.* court on the facts before it expressly omitted any consideration of a chemical dependency because "there [was] no contention that Mother has any chemical dependency" and "[t]here [was] no question that Mother has … [no] chemical dependency that would preclude her from having custody of her children." *K.A.W.*, 133 S.W.3d at 17-18.

Because Mother has failed to demonstrate that the trial court misapplied the law and does not challenge the judgment on any other basis within our standard of review, we affirm the trial court's judgment.  S*ee **Q.A.H.**, 426 S.W.3d at 12.


GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS